Joe D. DORITY, Rocky J. Eslinger, Daniel L. Hamon, Ricky J. Hamon, Fred Hawkins, Billy L. Hughes, Willie Underwood and Theodore Wallace, Plaintiffs-Appellants,

v.

GREEN COUNTRY CASTINGS CORPORATION, Defendant-Appellee.

No. 61021.

Supreme Court of Oklahoma.

Oct. 21, 1986.

As Corrected Oct. 22, 1986.

Gloyd L. McCoy, Ben A. Goff, Oklahoma City, for plaintiffs-appellants.

Richard L. Barnes, Brian W. Pierson, Nichols & Wolfe, Inc., Tulsa, for defendant-appellee.

OPALA, Justice.

The two issues before us in this appeal from a prejudgment order dismissing an action for lack of subject-matter jurisdiction are: [1] Does the National Labor Relations Act [NLRA][1] preempt these appellants' state statutory claims for retaliatory discharge under 85 O.S.1981 §§ 5–7?[2] and

---

1. 29 U.S.C. §§ 141 et seq.

2. The terms of 85 O.S.1981 §§ 5–7 provide:
 § 5. "No person, firm, partnership or corporation may discharge any employee because the employee has in good faith filed a claim, or has retained a lawyer to represent him in said claim, instituted or caused to be instituted, in good faith, any proceeding under the provisions of Title 85 of the Oklahoma Statutes, or has testified or is about to testify in any such proceeding. Provided no employer shall be re-

[2] Does the prior adjudicative decision by the National Labor Relations Board [NLRB], which reinstates the appellants to their jobs and awards them backpay, bar their state-court retaliatory discharge claims?[3] We answer both questions in the negative.

The appellants [employees], joint plaintiffs in an action for damages from retaliatory discharge, had filed workers' compensation claims. They belonged to a union that had conducted a strike against Green Country Castings Corporation [employer], at the conclusion of which all union members other than the employees were reinstated to their former jobs. The employer informed them that, after a review of their medical reports, the company physician had recommended that they not be rehired because of their medical unfitness for the jobs. Meanwhile, each of the employees, after settling his compensation claim, had obtained a medical release for returning to work.

The employees initially invoked their NLRA remedies against the employer. The administrative law judge found that their discharge was motivated by union activity as well as by the filing of workers' compensation claims. The employer was ordered to reinstate them and to give them backpay.

The NLRB affirmed the order but deleted the administrative law judge's finding that the employer's refusal to reinstate the employees was motivated by their filing of workers' compensation claims. The order

against the employer was, in effect, rested on a finding that the employees had been dismissed because of their union activities.

While the employer's appeal to the NLRB stood pending, the employees brought a state-court action against the employer for wrongful discharge in violation of 85 O.S. 1981 §§ 5–7.[4] The district court dismissed the suit for lack of subject-matter jurisdiction, holding that the claim was federally preempted by the NLRA.

## I

## THE NLRA DOES NOT PREEMPT THE EMPLOYEES' STATE STATUTORY RETALIATORY DISCHARGE CLAIM

The Supremacy Clause in Art. VI of the United States Constitution mandates that in some instances state regulation stand preempted by national legislation.[5] The range of the congressionally exercised power to regulate exclusively the field of labor-management relations is to be divined from an examination of congressional intent.[6] Congress enacted the NLRA to encourage economic recovery by creating national uniformity through the labor law's administration by one expert, centralized agency.[7] Even though the congressional power is broad, courts have refused to extend federal preemption to *every* state regulation that might affect labor relations because Con-

quired to rehire or retain any employee who is determined physically unable to perform his assigned duties."
§ 6. "A person, firm, partnership or corporation who violates any provision of Section 5 of this title shall be liable for reasonable damages suffered by an employee as a result of the violation. An employee discharged in violation of the Workers' Compensation Act shall be entitled to be reinstated to his former position. The burden of proof shall be upon the employee."
§ 7. "The district courts of the state shall have jurisdiction, for cause shown, to restrain violations of this act."

**3.** Both parties appear to view federal preemption as the sole issue for decision on appeal. Because the employer contends it is shielded

from the retaliatory discharge action by the grievance procedure finally concluded under the NLRA, the second issue also must be reached for decision.

**4.** See footnote 2 *supra* for the text of 85 O.S. 1981 §§ 5–7.

**5.** *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 1909–1910, 85 L.Ed.2d 206 [1985].

**6.** *Allis-Chalmers Corp. v. Lueck, supra* note 5.

**7.** *New York Telephone Company v. New York State Department of Labor,* 440 U.S. 519, 528, 99 S.Ct. 1328, 1334, 59 L.Ed.2d 553 [1979].

gress failed to spell out the preemptive effect of the NLRA.[8]

■ The federal court of last resort has dealt with the outer limit of NLRA's preemption on many occasions. Its penultimate case addressing the doctrine's application is *San Diego Building Trades Council, Etc. v. Garmon.*[9] There, the Court developed the standards for gauging the preemptive effect of the NLRA. If an activity is arguably protected or prohibited by the NLRA, state regulation of that activity must yield,[10] but state statutes may nonetheless be sustained if the conduct in question [1] is only of peripheral concern to the congressional purpose in enacting the NLRA or [2] touches interests "deeply rooted" in local feeling and responsibility.[11]

As with most legal gauges, the *Garmon* test is much easier to articulate than to apply. The very Court that sired it has candidly stated that confusion in charting the boundary of the NLRA preemption sweep might be the result of its own pronouncements which apply the *Garmon*-fashioned criteria.[12]

■ Most recent decisions appear to clad the *Garmon* test in functional terms.

A *presumption of preemption* will arise if the conduct which a state undertakes to regulate is arguably protected or prohibited by the NLRA.[13] The presumption becomes conclusive if the NLRA *actually protects* the conduct in question.[14] When conduct is found to be *actually or arguably prohibited* or to be *arguably protected* by the NLRA, the presumption of preemption can be rebutted if [1] unusually deeply-rooted local interests are at stake or [2] the conduct regulated by state law is merely one of peripheral concern to the NLRA's purpose.[15] To determine whether a state regulation can be sustained despite the presumption of preemption, a court must apply a balancing test which weighs the nature and extent of the state interests involved against the potential interference with the NLRA from the likely impact of state regulation.[16]

■ The present case calls for such a functional inquiry. We can assume here, without deciding, that the conduct prohibited by Oklahoma's retaliatory discharge statute is either actually or arguably prohibited by the NLRA.[17] Our next task is to

---

**8.** *Farmer v. United Brotherhood of Carpenters and Joiners of America,* 430 U.S. 290, 297, 97 S.Ct. 1056, 1061, 51 L.Ed.2d 338 [1977].

**9.** 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 [1959].

**10.** See footnote 9 *supra,* 359 U.S. at 244–247, 79 S.Ct. at 779–781.

**11.** See footnote 9 *supra,* 359 U.S. at 244, 79 S.Ct. at 779.

**12.** *Amalgamated Ass'n of St., E.R. & M.C. Emp. v. Lockridge,* 403 U.S. 274, 286, 91 S.Ct. 1909, 1917, 29 L.Ed.2d 473 [1971].

**13.** *Belknap, Inc. v. Hale,* 463 U.S. 491, 498–499, 103 S.Ct. 3172, 3177, 77 L.Ed.2d 798 [1983] and *Brown v. Hotel & Restaurant Employees & Bartenders,* 468 U.S. 491, 501, 104 S.Ct. 3179, 3186, 82 L.Ed.2d 373 [1984].

**14.** *Brown v. Hotel & Restaurant Employees & Bartenders, supra* note 13, 468 U.S. at 503, 104 S.Ct. at 3187.

**15.** *Brown v. Hotel & Restaurant Employees & Bartenders, supra* note 13.

**16.** *Farmer v. United Brotherhood of Carpenters and Joiners of America, supra* note 8, 43 U.S. at 301, 97 S.Ct. at 1063.

**17.** The NLRB has held that the filing of a workers' compensation claim is "concerted activity" within the meaning of the NLRA. See *Krispy Kreme Doughnut Corp.,* 245 NLRB 1053, 1061 [1979]: An employer who discriminates against an employee for filing a workers' compensation claim would be deemed engaged in a prohibited unfair labor practice. The employer places great emphasis on the cited NLRB decision and argues that it brings this case squarely within the *Garmon* test. As we note in Part I of this opinion's text, an activity *actually prohibited* by the NLRA is but *presumptively preempted.* The weight to be accorded the NLRB's decision in *Krispy Kreme* is in doubt. This is so because the 4th Circuit, on review of the cited decision by the NLRB, rejected that agency's expansive definition of "concerted activity" and declined to allow its enforcement. See *Krispy Kreme Doughnut Corp. v. National Labor Relations Board,* 635 F.2d 304, 309 [4th Cir.1980].

The NLRB's construction of the NLRA is entitled to deference from the courts if it is found reasonable. *National Labor Relations Board v. Transportation Management, Corp.,* 462 U.S.

balance Oklahoma's interest in regulating the conduct against the statute's potential for interference with the NLRA. In *Peabody Galion v. Dollar* [18] the U.S. Court of Appeals for the 10th Circuit, in an exhaustive analysis, undertook an identical task.

*Peabody* identified the factors to be balanced. It listed several of the NLRA's objectives: the promotion of labor peace, the stimulation of productivity and the elimination of unqualified employees from an employer's work force. [19] It defined the conduct the state statute sought to regulate as the firing of employees because they had filed workers' compensation claims. [20] The importance of the state's interest in maintaining the integrity of its workers' compensation system met with a favorable assessment. [21] The court concluded that the narrow scope of 85 O.S. 1981 §§ 5–7 rendered the conduct it regulated a peripheral concern of the NLRA. [22] The absence of any interference with the NLRA's objectives, coupled with the important state interest in regulating the conduct interdicted by the statute, brought the case within the *Garmon*-test exception to preemption. We follow the *Peabody* analysis today as a sound and correct exposition of the current federal law. [23] A U.S. appellate court's assessment of a federal law's impact upon the validity and effect of Oklahoma's statutory norms should be accorded great respect. [24] We hence hold that the NLRA does not, by force of federal preemption, supplant a state retaliatory dis-

393, 402–403, 103 S.Ct. 2469, 2474–2475, 76 L.Ed.2d 667 [1983]. At least one other court has failed to follow the NLRB's "concerted activity" construction in the agency's *Krispy Kreme* order. *Flick v. General Host Corp.*, 573 F.Supp. 1086, 1087–1088 [N.D.Ill.1983]. *Flick*, coupled with the 4th Circuit's refusal to enforce the *Krispy Kreme* order, injects serious doubt into the viability of NLRB's administrative interpretation.

**18.** 666 F.2d 1309 [10th Cir.1982]. In *Peabody Galion v. Dollar* the plaintiffs brought an action under the provisions of 85 O.S.1981 §§ 5–7 (*supra* note 2), alleging that they were wrongfully discharged. The employees belonged to a union that had entered into a collective bargaining agreement with the employer, which provided for arbitration of disputes that arose under its terms. The agreement contained some guidelines for the treatment of workers who had filed compensation claims. Two of the plaintiffs had unsuccessfully pursued redress under the agreement's grievance procedure before they filed a diversity action in federal district court. The 10th Circuit held that [1] a retaliatory discharge action under the terms of 85 O.S.1981 §§ 5–7 is not preempted by the NLRA and [2] neither the federal policy in favor of arbitration nor the exclusivity of remedies doctrine operates to bar the employees' Oklahoma-based suit.

The employer argues that the presence of a collective bargaining agreement in *Peabody, supra*, distinguishes it from the instant case. It is asserted that the agreement, which provided for mandatory grievance procedures, served to remove *Peabody* from the scope of the preemption doctrine. We disagree. The 10th Circuit's preemption-issue analysis did not depend upon the presence or absence of a collective bargaining agreement. Because the agreement existed, an additional issue was tendered—the effect of the federal policy in favor of arbitration on maintenance of the suit. The prudential concerns of that issue did not affect the 10th Circuit's preemption analysis.

**19.** *Peabody Galion v. Dollar, supra* note 18 at 1316–1317.

**20.** *Peabody Galion v. Dollar, supra* note 18 at 1316.

**21.** *Peabody Galion v. Dollar, supra* note 18 at 1317.

The Oklahoma legislature obviously considered the state's interests in the integrity of the workers' compensation system and the health of its workers when it created a statutory cause of action cognizable in ordinary courts. See *WRG Construction Company v. Hoebel*, Okl., 600 P.2d 334 [1979].

**22.** *Peabody Galion v. Dollar, supra* note 18 at 1317–1318.

**23.** Although *Peabody, supra* note 18, did not explicitly mention the functional approach to the preemption problem, its analysis clearly followed that test. In the *Peabody* text it is stated that "... even assuming that there exists a basis for a preliminary finding of preemption, still this statute would stand up under analysis and would fit within the 'state concern' exceptions to the preemption requirement. * * * " 666 F.2d at 1317.

**24.** While an inferior federal court's pronouncement on a federal-law question has no binding force on a state court of last resort, it is indeed highly persuasive. *Phillips v. Williams*, Okl., 608 P.2d 1131, 1135 [1980].

charge claim authorized by 85 O.S.1981 §§ 5–7.[25]

## II

## THE PRIOR ADMINISTRATIVE ADJUDICATION DOES NOT BAR THE EMPLOYEES' STATE CLAIM

 The employees have been awarded reinstatement and backpay as a result of administrative proceedings before the NLRA. The employer appears [26] to argue that the employees' success in the agency process, whose order included a finding of facts related to their statutory retaliatory discharge claim, operates to bar the employees' state claim. We disagree.

The Restatement (Second) of Judgments [27] withholds res judicata effect from an agency's adjudicative decision if pursuit of a related claim in another tribunal would not disturb "the scheme of remedies" affordable by the administrative tribunal. A determination whether two or more remedies can co-exist implicates considerations already explored in our preemption-issue analysis. The question becomes one of statutory construction; namely, does the NLRA allow cumulative remedies? [28]

The U.S. Supreme Court has repeatedly recognized that the scheme of remedies provided by the NLRA would not be violated by a supplemental state remedy.[29] This is so because the NLRA simply does not purport to compensate an employee for all damages he might sustain.[30] The same principles are invoked when supplemental remedies are sought to be upheld in similar contexts.[31] Accordingly, we hold today that an action for damages from retaliatory

**25.** The analysis of the 9th Circuit in *Garibaldi v. Lucky Food Stores, Inc.*, 726 F.2d 1367 [9th Cir. 1984] is in accord. Our conclusion is also reinforced by *Messenger v. Volkswagen of America, Inc.*, 585 F.Supp. 565 [S.D.W.Va.1984]; *Ruiz v. Miller Curtain Co., Inc.*, 702 S.W.2d 183, 185 [Tex.1986] and *Vaughn v. Pacific Northwest Bell Tel. Co.*, 289 Or. 73, 611 P.2d 281, 286–287 [1980], which hold that statutes very similar to 85 O.S.1981 §§ 5–7 are not preempted by federal labor law.

The U.S. Supreme Court has recently dealt with federal preemption in *Allis-Chalmers Corp. v. Lueck, supra* note 5. *Lueck* was a bad-faith claim against the employer's risk carrier of a disability insurance plan provided under the terms of a collective bargaining agreement. There the Court spelled out the importance of the distinction between an action founded on the collective bargaining agreement and other types of tort claims. *Lueck* in essence holds that a breach of the collective bargaining agreement cannot be converted into a state cause of action by an assertion that the breach was committed in bad faith. Because the present action is not predicated upon a breach of the collective bargaining agreement, the teaching of *Lueck* is not applicable here. For other interpretations of *Lueck*, see *Lingle v. Norge Div. of Magic Chef, Inc.*, 618 F.Supp. 1448 [S.D.Ill.1985] and *Edwards v. Western Manufacturing*, 641 F.Supp. 616 [D.C.Kan.1986].

In the case at bar the district court's dismissal was grounded on *Viestenz v. Fleming Companies, Inc.*, 681 F.2d 699 [10th Cir.1982]. *Viestenz* did not overrule *Peabody, supra* note 18; in fact, *Peabody* was not even mentioned there. The balancing test merely yielded a different result. In *Viestenz* the employee brought an intentional infliction of mental distress suit against the employer. The U.S. Supreme Court had held that, for such conduct to be of enough magnitude to justify the "local concern" exception to preemption, the conduct had to be "outrageous." *Farmer v. United Brotherhood of Carpenters and Joiners of America, supra* note 8, 430 U.S. at 297, 97 S.Ct. at 1061. *Viestenz* merely held that the employee had failed to prove that the employer's conduct was "outrageous" and thus his suit stood preempted. The result is consistent with the *Peabody* analysis.

**26.** See footnote 3 *supra*.

**27.** Restatement (Second) of Judgments § 83(3) [1982].

**28.** Restatement (Second) of Judgments § 83(3) comment g [1982].

**29.** *International Union, Etc. v. Russell*, 356 U.S. 634, 644–646, 78 S.Ct. 932, 938–939, 2 L.Ed.2d 1030 [1958]; *International Ass'n. of Machinists v. Gonzales*, 356 U.S. 617, 621, 78 S.Ct. 923, 925, 2 L.Ed.2d 1018 [1958] and *Linn v. United Plant Guard Workers of America, Local 114*, 383 U.S. 53, 63–64, 86 S.Ct. 657, 664–665, 15 L.Ed.2d 582 [1966].

**30.** See cases cited in footnote 29 *supra*.

**31.** *Alexander v. Gardner-Denver Company*, 415 U.S. 36, 48–49, 94 S.Ct. 1011, 1019–1020, 39 L.Ed.2d 147 [1974] and *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740–741, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641 [1981].

discharge does not conflict with the NLRA-provided cluster of remedies.[32]

The trial court's prejudgment dismissal for want of subject-matter cognizance is reversed and the cause is remanded with directions to reinstate the action and to proceed further in a manner not inconsistent with this pronouncement.

SIMMS, C.J., DOOLIN, V.C.J., and HODGES, LAVENDER, HARGRAVE, WILSON and KAUGER, JJ., concur.

SUMMERS, J., disqualified.

---

32. In *International Union, Etc. v. Russell, supra* note 29, 356 U.S. at 646, 78 S.Ct. at 939, the Court stated: "* * * *Of course, [an employee]* ... *could not collect duplicate compensation for lost pay from the state courts and the Board.* * * *"* [Emphasis supplied.]