1997 OK CIV APP 69

**Lisa Jan HOEDEBECK, now Shaw, Plaintiff/Appellant,**

v.

**Raymond Casey HOEDEBECK, Defendant/Appellee.**

**No. 87292.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Oct. 3, 1997.

Bradley D. Brickell, Christine R. Fritze, Stephen M. Morris, Oklahoma City, for Plaintiff/Appellant.

Lyn E. Ables, Madill, for Defendant/Appellee.

### OPINION

GARRETT, Judge:

¶1 Lisa Jan Hoedebeck, now Shaw, Appellant or Lisa, and Raymond Casey Hoedebeck, Appellee or Raymond, were divorced in August, 1994. In the divorce judgment the court ordered joint custody of the two minor children born of the marriage. The children were to reside with Lisa during the school year, and with Raymond during the summer

months. The joint custody plan which was approved by the court contained an agreement of the parties requiring the children to attend the Madill Public Schools. Raymond and Lisa were allowed visitation with the children when the other one had physical custody.

¶2 In December, 1995, Lisa moved to modify the custody order. She sought sole custody of the children.[1] Raymond filed a similar motion shortly thereafter. The court vacated the joint custody order and awarded sole custody of the children to Raymond, subject to visitation with Lisa at all reasonable and seasonable times as the parties may agree. However, in the event they cannot agree, she shall have "standard" visitation. She appeals.

¶3 First, we point out that this is not the usual case involving a divorce decree which contained a judgment awarding custody of minor children to one party, and, at a later time, the other party moves to modify the order by changing the custody of the child or children. Here, both parties were awarded custody of the children pursuant to an agreed joint custody plan. It is obvious that the usual rule requiring a substantial change of conditions does not apply. Joint custody will not succeed without the cooperation of the parties. When it becomes apparent to the court that joint custody simply does not work, then a material change of circumstances has occurred, and the joint custody arrangement must be vacated. At that point, the court is back to "square one" and must enter a custody order which is in accord with the best interests of the children. 43 O.S. 1991 § 109 G. It matters not what the reason was for the failure of the joint custody plan. The fact that Lisa had remarried and had changed her residence to another school district, and joint custody was no longer satisfactory to her, constituted problems. Also, it appears that the religious beliefs of the parties caused disputes. While courts may not decide religious issues, the trial court found itself in the position of being required to determine the best interests of

---

1. The children were born on June 16, 1983, and February 8, 1985, respectively. At the time of the divorce they were approximately 9 and 11 years of age. At the time the custody order, which is involved in this appeal, was entered, they were approximately 11 and 13 years of age.

the children even though religious disputes were rampant. Incidentally, neither party was charged or determined to be an unfit parent.

¶ 4 The evidence showed that Lisa and Raymond were raised in the tradition of a Southern Baptist Church; since birth the children have been raised in that religious tradition; during their marriage, Lisa and Raymond were active in the Southern Baptist Church, and their children were active as well; the extended families of both Lisa and Raymond practice Southern Baptist traditions and are a close-knit extended family; Lisa has remarried and has accepted the religious tenets and beliefs of the Seventh Day Adventist Church; she denied all the grandparents the right to visit the children without her being present because she believed her new beliefs were being disparaged by the grandparents to the children;[2] prior to the divorce the children had enjoyed an active relationship with both sets of grandparents, particularly the maternal grandmother, who had assisted in rearing both children. Also, contrary to the joint custody agreement, Lisa attempted to transfer the children from the Madill School to the Dickson School without Raymond's consent.

¶ 5 The Court found that the children, particularly Jennifer, have no difficulty in adjusting to Lisa's religious beliefs. To the contrary, the children enjoy participating in the religious lives of both parties and the extended families of both parties. In this connection, the Court ordered both parties not to interfere with the children participating in the religious life of the other parent.

¶ 6 Lisa contends the court erred in awarding custody to Raymond based on her religion because there was no finding that her religious beliefs were harmful to the children. She contends her freedom of religious rights under the First Amendment to the United States Constitution have been violated by placing custody with Raymond. She contends the portion of the order which prohibits either parent from interfering with the children participating in the religious life and worship of the other parent is merely superficial.

¶ 7 However, the record contains evidence about how the children's lives had been altered by Lisa's remarriage and subsequent change of religion. The children had become detached, weepy; they missed visiting their extended families; the children were used as messengers by Lisa because she would not personally communicate with Raymond. Lisa moved away from the extended families and she deferred decisions regarding the children to her new husband; she put pressure on the children to keep certain matters from Raymond; all witnesses, including Lisa's mother and sister, testified they believed Raymond should be the custodial parent. The evidence also showed: Raymond wanted the children to be involved with both their maternal and paternal grandparents; they had care of the children at least one-half of the time during the time of joint custody; he did not believe the children should be "placed in the middle" and forced to choose sides.

¶ 8 While Lisa characterizes the placement of the children with Raymond as religiously motivated, the evidence showed the children were being emotionally harmed by the actions of Lisa in ways which did not include the religion matter. Again, the court may not decide that one religion is better or worse than another, but it does have the duty to determine the best interests of the children. To fail to consider the impact of certain actions the parents take, simply because the actions are labeled religious would be to exempt such acts from consideration, no matter the impact on the children. This religious argument is neither new nor rare. Any time divorced parents have different religious faiths, this contention may be made by the losing party. The fact that one parent is awarded custody of the children does not, in itself, violate the other parent's religious rights.

¶ 9 Lisa contends the court impermissibly found that her violation of the divorce decree in attempting to remove the children from their current school system was a ground for awarding custody of the children to Raymond. The record does not reflect this was the only basis for the court's decision. It was part of the evidence. The

2. The evidence appears to establish the fact that Lisa's fears were not well founded.

court properly considered the evidence in this respect along with the other evidence presented by the parties.

¶ 10   43 O.S. 1991 § 112(C)(3) provides that when in the best interests of the children, frequent and continuing contact of the children with both parents should be assured. Which parent is most likely to allow the children to have frequent and continuing contact with the non-custodial parent is a matter which may be considered by the courts. *Newell v. Nash*, 1994 OK CIV APP 143, 889 P.2d 345. Also, the *Newell* Court [page 350] said:

> Because both parties sought termination of the joint custody arrangement, and because the joint custody arrangement was, in fact, terminated, the trial court was obligated to award primary custody as if custody was being awarded in the first instance. See 43 O.S. 1991 § 109(G). In reviewing such custody orders, deference will be given to the trial court since the trial court is better able to determine controversial evidence by its observation of the parties, the witnesses and their demeanor. *Manhart*, supra, at 1237.

¶ 11   When custody of minor children is the issue, the primary consideration is always to be what is in the best interest of the children. *David v. David*, 460 P.2d 116, (Okl.1969). One who challenges the trial court's determination on custody, based on the best interests of the children, has the burden of demonstrating an abuse of discretion, and must put forth the evidence relied upon to establish the trial court's error and must affirmatively show how this evidence shows the trial court's decision to have been contrary to the children's best interests. *David v. David*, supra, *Gibbons v. Gibbons*, 442 P.2d 482 (Okl.1968), and *Gorham v. Gorham*, 1984 OK 90, 692 P.2d 1375. Absent such a showing, the trial court's determinations are presumptively correct. Cf. *Carpenter v. Carpenter*, 1982 OK 38, 645 P.2d 476.

¶ 12   It must be noted that custody orders will not be disturbed on appeal unless found to be against the clear weight of the evidence. *Carpenter v. Carpenter*, supra, *Lynn v. Lynn*, 443 P.2d 106 (Okl.1968), *Manhart v. Manhart*, 725 P.2d 1234 (Okl.1986). In *Alonzo v. Alonzo*, 1996 OK CIV APP 48, 917 P.2d 1014, a child custody case, this Court said:

> Our job on review is not to second guess the fact finder, but only to ascertain whether there was sufficient competent evidence introduced to support the trial court's decision when the correct law was applied.

¶ 13   Based on an examination of the record and considering the totality of the evidence, we cannot say that the trial court's judgment is contrary to the weight of the evidence. We are unable to classify the child custody order as being a violation of Lisa's First Amendment, freedom of religion, rights. We hold that the record supports the trial court's order as being consistent with the best interests of the minor children.

¶ 14   AFFIRMED.

JONES, P.J., and ADAMS, C.J., concur.