2012 OK 90

Mark Anthony SCUNGIO, Appellee,

v.

Margaret Sue SCUNGIO, Appellant.

No. 110,251.

Supreme Court of Oklahoma.

Oct. 30, 2012.

As Corrected Nov. 5, 2012.

Floyd W. Taylor, Kevin S. Taylor, The Taylor Law Firm, P.L.L.C., Oklahoma City, for Appellant.

Jay F. McCown, Tamra A. Spradlin, Michelle K. Smith, A. Seth Killman, Father's Parental Rights Law Center, Oklahoma City, for Appellee.

COLBERT, V.C.J.

¶ 1 This Court granted certiorari review of a certified interlocutory order to address two issues which concern modification of child support: (1) Was a motion to modify properly before the district court for its determination? (2) Do the four corners of the divorce decree in this matter demonstrate the parties' intent to be free of the statutory provisions concerning modification of child support? This Court holds the procedural vehicle utilized to place the motion to modify child support before the district court was authorized by statute. Additionally, the parties clearly demonstrated their intent that there be no modification of child support without their mutual assent and it was error for the district court to hold to the contrary.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In September, 2001, Mark Anthony Scungio (Father) and Margaret Sue Scungio (Mother) adopted their three foster children, siblings, two of whom were special needs children with serious psychological disabilities. In July, 2004, in contemplation of divorce, the parties entered into a written agreement titled "Contractual Agreement–Separation and Parenting Plan to be incorporated into divorce decree." A divorce action was filed in 2007 and the document was incorporated into the divorce decree in October, 2009. Under the Agreement, Mother became the custodial parent and Father assumed support obligations.

¶ 3 The Agreement and the divorce decree recited facts that are key to understanding the parties' intent concerning child support at the time of contracting. The parties were married in California in 1988 and have resided in Oklahoma since 1991. In the 2004 Agreement, Father admitted he committed "emotional abuse to his wife and children such that irreconcilable differences have arisen between the parties in consequence of which the parties are now living separate and apart." Concerning child support, the Agreement provided: "Husband agrees that his emotional abuse toward Wife and children exacerbated the any [sic] mental illnesses preexisting in the children and as such he has an even greater responsibility to support them." The Agreement also acknowledged that each parent:

agrees that he or she understands that due to the psychiatric disabilities of [two of the children], their disabilities may continue into adulthood, and that either or both may require substantial care and personal supervision and may not be capable of self-support and that under [the applicable Oklahoma Statutes] it is the parent's duty to maintain such person. If such is the case, the Mother agrees to provide the continued care beyond the age of majority and the Father agrees to provide continued child support as established above.

The Agreement set a formula for the calculation and payment of child support which provided:

Husband agrees to pay Wife, as child support, an amount that when added to the support alimony ... of $615.00 per month equals one half his military base pay (gross) or an amount equal to one half his highest base pay (gross) minus $615.00 in the event he leaves the military or retires in the form of child support with increases cost of living (COLA) adjustments, raises, and grade increases.

Child support will be payable on the first of each month in the form of an allotment into Wife's checking account and will be payable upon the signing of this Contractual Agreement in the amount of $1035.00 (2004 E–7 pay at 18 years in service) per month and will continue to be paid by the first of each month until all three children reach the age of majority and becomes [sic] self-supporting or 22 if attending college.

Thus, the Agreement provided terms and a formula that provided for more than what was required by the guidelines set out in the Oklahoma Statutes in order to meet the spe-

cial needs of two of their children.[1]

¶ 4 Father's child support payments were in significant arrearage at the time of divorce and have remained so. Before the divorce trial in October, 2009, Father retired from the United States Air Force and child support was calculated using the formula set out in the Agreement. A divorce was pronounced from the bench at trial. In December, 2009, the DHS filed a "Notice of Necessary Party" in the divorce action which outlined the services that the DHS was providing for the minor children and notifying the District Court that it was a necessary party concerning "child support, medical support, and any debt due the State of Oklahoma." At the same time, the DHS filed a "Notice of Redirection of Support Payments" directing such payments to the Oklahoma Centralized Support Registry. The decree which incorporated the Agreement was signed and filed on March 30, 2010.

¶ 5 On May 12, 2010, the Office of Administrative Hearings: Child Support Department of Human Services issued a "Notice to Review and Modify Support Order." The DHS asserted that the child support award was not in accord with the child support guidelines and that a change in Father's income required a reduction in the amount of his child support. A hearing was held before an administrative law judge on October 28, 2010, and an administrative "Court Minute" was issued which provided:

> Now on this 28th day of October, 2010, Petitioner appears in person, pro se Respondent appears in person and with counsel, Floyd Taylor. State appears thru counsel, Kelli S. Price. After review of the pleadings and issues in this matter this court determines as follows: In the interest of judicial economy and in order to resolve all issues herein this matter shall be and is hereby transferred to the Oklahoma County District Court. The State shall set a MTDA & set this matter for hearing and the parties shall be notified by regular mail. All parties are ordered to appear for further hearings in this matter.

On November 10, 2010, an administrative law judge ordered the matter transferred to the District Court of Oklahoma County.

¶ 6 On December 30, 2010, The DHS filed in the divorce action a "Request to Docket Administrative Order" on behalf of "Plaintiff" in order to enforce the October 28, 2010, administrative minute order. In addition it filed a "Motion to Determine Arrearage" in the divorce action asking the court to settle "a dispute as to the arrearage owed" and set a judgment payment. The DHS did not file a motion to modify Father's child support in the divorce action apparently taking the position that a new motion was unnecessary.

¶ 7 On July 18, 2011, Mother moved to dismiss the DHS motion to modify child sup-

---

1. The Agreement contemplated Father's retirement and, in addition to child support, made the following provision for alimony:

> Husband agrees that [two of the children] were known to be emotionally disturbed prior to adoption and that they are currently psychiatrically disabled to the extent to which they require substantial care and personal supervision such that Wife is now unable to work. Furthermore, the many psychiatric professionals involved with [the two children] say that in the next few years their need for care and supervision may only increase. Therefore, Husband agrees to pay Wife the sum of $615.00 alimony per month by the first of each month in the form of an allotment into Wife's checking account commencing with the signing of this Contractual Agreement and each month thereafter until all three children are no longer dependent on Wife for her care and supervision that is to include adult children.

> At such time as Husband retires from the military if the share of retirement pay due to Wife is greater than what would be due in alimony, then when retirement pay starts, support alimony will cease.
> If retirement pay is less that the amount due in alimony, th[e]n Husband agrees to pay the difference to the sum of $615.00.
> *Note: The retirement pay is part of the property division and is not alimony.*
> Wife accepts the payments specified in and to be made under this section in full satisfaction and settlement of all her right, claim and demand against Husband for support, maintenance and alimony excluding retirement pay which will continue permanently. Furthermore, if Husband chooses to forgo his federal pension and leave the military early, he agrees to provide the $615.00 alimony [which] will continue permanently.

The amount of alimony was changed to $265.00 when the contract was executed in 2004.

port which had been filed in the administrative action. She relied on this Court's decision in *Parham v. Parham*, 2010 OK 24, 236 P.3d 74, and argued the Agreement clearly expressed an intent that child support not be subject to the statutory requirement of modification in the event of a change in Father's income. Additionally, Mother argued that the procedure by which the administrative law judge "transferred" the matter to the district court was not authorized by statute.

¶ 8 The trial court denied Mother's motion to dismiss the request for modification of child support without addressing the procedural issue and holding that Mother "failed to demonstrate an intention by the parties to the Separation Agreement not to be subject to the statutory conditions for modification of child support." The trial court set the motion to modify child support for an evidentiary hearing. Father joined Mother in urging that the order be certified for interlocutory appeal. The order was certified and this Court granted certiorari review of the procedural issue as well as the substantive issue presented in this matter.

## STANDARD OF REVIEW

¶ 9 "The courts will decide, as a matter of law, whether a contract provision is ambiguous and interpret the contract provision as a matter of law where the ambiguity can be cleared by reference to other provisions or where the ambiguity arises from the contract language and not from extrinsic facts." *Oklahoma Oncology & Hematology, P.C. v. U.S. Oncology, Inc.*, 2007 OK 12, ¶ 27, 160 P.3d 936, 946 (citations omitted). Issues of law are reviewed de novo. *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084. Whether the transfer procedure, utilized by the administrative law judge to place the issue of child support modification before the District Court, is authorized by statute presents a question of law for this Court's de novo review.

## THRESHOLD PROCEDURAL ISSUE

¶ 10 This matter presents a threshold issue of procedure concerning whether a motion to modify child support was properly before the district court. Mother contends that the transfer procedure utilized by the DHS administrative law judge is not authorized by statute and that Father was required to file another motion to modify in the district court divorce action. Father argues that the transfer was merely one of forum or venue and there was no need to file a new motion.

¶ 11 Section 240.1 of title 56 authorizes the review of child support orders when child support services are provided by the DHS:

A.1. In cases in which child support services are being provided by the Child Support Enforcement Division of the Oklahoma Department of Human Services, the Division may:

a. initiate enforcement proceedings to:

(1) obtain a judgment for arrearages,

(2) effectuate an income assignment,

(3) receive current support and judgment payments, and

(4) review and modify support orders pursuant to child support guidelines in Section 118 of Title 43 of the Oklahoma Statutes,

b. initiate any other legal proceeding to implement the establishment and collection of support and other court-ordered requirements of support from an obligor including, but not limited to, medical expenses, insurance premiums, and child care costs, and,

c. appeal orders as necessary to implement the provisions of this section.

Okla. Stat. tit. 56, § 240.1(A) (2011). Section 118.1(A) of title 43 outlines the process for such reviews and provides that an order of modification may be set by the DHS in administrative or district court. It provides:

In all cases in which child support services are being provided under the state child support plan as provided in Section 237 of Title 56 of the Oklahoma Statutes, the Department shall conduct reviews of child support orders pursuant to rules promulgated by the Department. If the Department conducts a review and determines that the child support obligation is not in accordance with child support guidelines, the Department shall file a notice of review and intent to modify the child support

order, and it shall be served upon the parties in accordance with law. The notice shall be set for hearing before a district or administrative court. *The district or administrative court shall review the child support obligation to determine its compliance with the child support guidelines and order modification if appropriate.* An order of modification shall be effective upon the date the notice of review and intent to modify the child support order was filed. Okla. Stat. tit. 43, § 118.1(A) (2011)(emphasis added). Thus, the administrative court and the district court are given concurrent jurisdiction to review and, if necessary, modify a child support order to bring it into compliance with the minimum support obligations provided by statute. "In filing cases involving concurrent jurisdiction between the administrative proceedings of the Department of Human Services and the district court, the cases shall be filed in the administrative proceedings of the Department of Human Services." Okla. Stat. tit. 56, § 240.9 (2011). The order of the administrative court may be appealed to the district court. Okla. Stat. tit. 56, § 240.1(A)(1)(c) (2011). An order that was not appealed may be docketed in the county of the underlying district court order for enforcement. Okla. Stat. tit. 56, § 237.10 (2011).

¶ 12 The statutory provisions for modification were followed in this matter and an administrative proceeding was initiated in the administrative court. After reviewing the matter, however, the administrative law judge determined that the interests of judicial economy and efficient resolution of all the issues presented required that the matter be transferred for the district court's determination. The administrative law judge did so by "docketing" the order so that the district court could construe the Agreement which it had incorporated into the divorce decree.

¶ 13 Although a "transfer" process is not specifically described in the statutory provisions for modification of child support, the authority of the administrative law judge to utilize that process is necessarily implied by the concurrent jurisdiction granted to the administrative and district courts to review and modify child support orders. *See* Okla

Stat. tit. 43, § 118.1(A) (2011); Okla. Stat. tit. 56, § 240.9 (2011). Therefore, the transfer procedure utilized to place the motion before the district court was entirely appropriate and Father was not required to file a new motion to modify child support. The filing of a second motion to modify would merely have created confusion as to which filing would control the effective date of the modification.

PRIMARY SUBSTANTIVE ISSUE

¶ 14 The primary dispute concerning modification of child support has arisen from two provisions in the Agreement. Section 15, titled "Modification", provides: "The provisions of this Contractual Agreement shall not be modified or changed except by the written mutual consent of the parties or their respective heirs, executors, administrators and assigns." In contrast, the "Governing Law" provision of the Agreement, found at Section 17, provides: "This Contractual Agreement shall be construed and governed in accordance with the laws of the State of Oklahoma." It then lists parenthetically the following statutory provisions that were in effect at the time of contracting: "Title 10, Sections 12 and 21.1, Title 15, Chapter 1. Title 43, Sections 101–103, 109, 110, 112, 112.1A, 113, 118–121, 134, 136, and 205 and Title 56, Sections 235 + ." At the time of contracting, section 118 of title 43 provided that "child support orders may be modified upon a material change in circumstances which includes, but is not limited to, an increase or decrease in income. . . ." Okla Stat. tit. 43, § 118(E)(16)(a)(1) (Supp.2008). As of 2009, that provision appears at section 118 I of title 43.

¶ 15 Father argues that the "no modification" provision of the Agreement directly conflicts with the "governing law" provision such that it renders the Agreement ambiguous. Father asserts that, because there is an ambiguity, the Agreement cannot constitute a clear expression of the parties' to be free from the statutory strictures of the child support modification statute as required by this Court's decision in *Parham v. Parham*, 2010 OK 24, 236 P.3d 74. Mother asserts that by merely including a choice of law provision the parties did not create ambigui-

ty in their expressed intent to deviate from the child support statutes in order to establish a plan to further the best interests of the children, two of whom have profound psychological disabilities.

■■■ ¶ 16 *Parham* and the decisions on which it was based establish the requirements concerning the special conditions for the termination or modification of child support which divorcing parents may set. There is no "absolute rule forbidding consent decrees from being modified without the parties' mutual consent." *Parham*, 2010 OK 24, ¶ 17, 236 P.3d at 78. Although a mutual consent provision is permissible, it is not automatically given effect. To effectuate such a provision, the parties must "expressly address termination and modification" and "clearly express that they do not intend for a particular support obligation to be subject to statutory provisions governing termination or modification." *Id.* Although "an express waiver of statutory rights in a consent decree is not required, ... the parties must nonetheless demonstrate intent to avoid the strictures of a particular statute." *Id.* at n. 7 (citing *Kittredge v. Kittredge*, 1995 OK 30, ¶ 5, 911 P.2d 903, 904). Further, the rule is subject to the following caveat:

> In recognizing that the parties have some latitude to agree upon special conditions for termination or modification of child support, we do not depart from this Court's long standing rule that an agreement of the parties as to child support is not binding upon the court, nor can such agreement affect the power of the court to modify an award of child support. *Parkey v. Parkey*, 1962 OK 110, ¶¶ 18–19, 371 P.2d 711, 714. Enforcement of any conditions concerning the termination or modification of child support that differ from the conditions provided by statute must always be guided by the best interests of the child.

*Id.*, ¶ 18 n. 8, 236 P.3d at 78.

¶ 17 Under the rule articulated in *Parham*, the parties must clearly express their intent to establish a plan for termination or modification of child support that avoids the statutory requirements. The statutory requirements concerning child support act as a procedural and substantive floor upon which the parties may add additional provisions for child support by their agreement. The parties are not free, of course, to establish child support in an amount less than that required by law or for a period of time that is less than the applicable statutes provide. To do so would be contrary to the best interests of the child and would render the child support order subject to judicial correction.

■■■ ¶ 18 As with any contract, the parties' intent concerning their child support agreement is controlling. "A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful." Okla. Stat. tit. 15, § 152 (2011). That intent is to be "ascertained from the four corners of the contract, and where the language is ambiguous, it will be interpreted in a fair and reasonable sense." *Oklahoma Oncology*, 2007 OK 12, ¶ 27, 160 P.3d at 946 *citing Mortgage Clearing Corp. v. Baughman Lumber Co.*, 1967 OK 232, ¶ 13, 435 P.2d 135, 139; Okla. Stat. tit. 15, §§ 155 & 157.[2] "The construction of an ambiguous contract is a question of law for the court where the ambiguity can be clarified by reference to other parts of the contract, or where the ambiguity arises by reason of the language used and not because of extrinsic facts." *Paclawski v. Bristol Laboratories, Inc.*, 1967 OK 21, ¶ 24, 425 P.2d 452, 456. In addition, "[a] contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." Okla. Stat. tit. 15, § 163 (2011). Thus, when an ambiguity arises from the language of a contract, intent must be determined from the four corners of the contract including the facts and circumstances surrounding its making. The court's duty is not to merely choose between competing in-

---

**2.** "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, subject, however, to the other provisions of this article." Okla. Stat. tit. 15, § 155 (2011). "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." Okla. Stat. tit. 15, § 157 (2011).

terpretations of the contract language that the parties assert in litigation.

¶ 19 The Agreement in this matter presents a choice of law provision that conflicts with the "no modification without the written consent of the parties" provision. The question becomes whether the choice of law provision was intended to make the cited law control exclusively, in which the "no modification" provision would be surplusage, or whether the parties intended no modification without mutual consent even when one of the cited statutes provides for judicial modification of child support upon a change in income. The two provisions cannot be harmonized and thus there is ambiguity as to the parties' intent at the time of contracting. The ambiguity, however, is easily cleared from the facts and circumstances surrounding the Agreement which are recited in the four corners of the document.

¶ 20 Considering the recited facts and circumstances surrounding the execution of the Agreement, the intent to establish a plan for meeting the special needs of the children is evident from the four corners of the contract. The parties to the Agreement clearly and expressly contemplated a plan by which Mother would obtain sole legal and physical custody of the three children, two of whom have special needs, and Father would assume financial responsibility beyond the child support guidelines which would continue beyond the children's majority. That plan contemplated Father's retirement from the Air Force and provided for that event. Father's present assertion that no such intent was expressed in the Agreement is not in accord with the four corners of the Agreement.

¶ 21 In this matter, the parties Agreement articulated the circumstances surrounding their decision to depart from the statutory minimum child support provisions and establish an alternative plan to better meet the needs of their children. They expressly chose to make that plan unmodifiable without their mutual written consent. Those circumstances and the text of the Agreement demonstrate a clearly expressed intent to be free

from the statutory strictures of the child support modification provisions. The trial court erred by failing to give effect to that intent. On remand, the trial court is directed to deny the petition to modify child support.[3]

CERTIORARI TO REVIEW CERTIFIED INTERLOCUTORY ORDER PREVIOUSLY GRANTED; ORDER REVERSED; CAUSE REMANDED.

CONCUR: TAYLOR, C.J.; COLBERT, V.C.J.; KAUGER, WATT, WINCHESTER, EDMONDSON, REIF, COMBS, JJ.

DISQUALIFIED: GURICH, J.

---

**3.** Mother's request for attorney fees is beyond the scope of the two issues certified by the trial court

for interlocutory review. It is therefore denied.