OSCN Found Document:DEPT. OF HUMAN SERVICES CHILD SUPPORT SERVICES v. COLDWATER

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 DEPT. OF HUMAN SERVICES CHILD SUPPORT SERVICES v. COLDWATER
2014 OK CIV APP 56
Case Number: 110933
Decided: 05/16/2014
Mandate Issued: 06/11/2014
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2014 OK CIV APP 56, __ P.3d __

STATE OF OKLAHOMA, DEPARTMENT OF HUMAN SERVICES CHILD SUPPORT 
SERVICES, Plaintiff/Appellee,
v.
LAFE C. COLDWATER, 
Defendant/Appellee,
and
ERICA ANN BUTLER, Custodian/Appellant.

APPEAL FROM THE DISTRICT COURT OF GARFIELD COUNTY, OKLAHOMA
HONORABLE DENNIS W. HLADIK, JUDGE

AFFIRMED IN PART, VACATED IN PART
AND REMANDED FOR 
FURTHER PROCEEDINGS

Bruce Hammer, Oklahoma Child Support Services, Enid, Oklahoma, for 
Plaintiff/Appellee,
Jon R. Ford, Enid, Oklahoma, for 
Defendant/Appellee,
Randy J. Long, Terri K. Blakley, FIELD, TROJAN, LONG 
& CLAYPOLE, P.C., Enid, Oklahoma, for Custodian/Appellant.


Bay Mitchell, Judge:
¶1 Custodian/Appellant Erica Ann Butler[1] appeals the decision of the trial 
court ordering Defendant/Appellee Lafe Coldwater to pay $400 per month in child 
support, denying her request for child support arrearages, and awarding legal 
custody of C.M.B., the minor child, to Defendant/Appellee.[2] Custodian/Appellant Erica Ann 
Butler ("Mother") is the natural mother of C.M.B., a minor child born 
out-of-wedlock. After the birth of the child, a paternity test determined 
Defendant/Appellee Lafe Coldwater ("Father") was the father of C.M.B., and Child 
Support Services filed an administrative action against Father to establish 
paternity and support obligations.
¶2 Prior to the birth of the child, Mother and Father had a sexual 
relationship, but were not a couple in a traditional sense. Mother lived with 
her boyfriend at the time, Joshua Guidroz. During her pregnancy, Mother told 
Father either he or Mr. Guidroz could be the father of the unborn child. C.M.B. 
was born December 1, 2008, and Mr. Guidroz was listed as the child's father on 
the birth certificate. Mother later filed a paternity action against Mr. 
Guidroz, but a paternity test revealed Mr. Guidroz was not C.M.B.'s father. 
Through an administrative proceeding initiated by Child Support Services, Father 
was ordered to take a paternity test in May 2010. Father was informed sometime 
in August or September 2010 that he was the biological father of C.M.B. Pursuant 
to an order entered by the Office of Administrative Hearings: Child Support, 
Father was ordered to pay child support to Mother beginning October 1, 2010. 
Father was not ordered to pay any back child support to Mother for the time 
period from C.M.B.'s birth through September 2010. Mother did not appeal this 
administrative order to the district court, and it was docketed in district 
court pursuant to 56 O.S. 2011 
§237.10. Father filed a petition for joint custody on October 15, 2010 using 
the same district court case number assigned to the docketed administrative 
order.[3]
¶3 The parties agree Mother was the sole care giver for C.M.B. from the time 
of birth until September 2010 (shortly after Father was informed he was the 
child's biological father) when Father began having some visitation with the 
child. After a temporary order hearing March 3, 2011, the trial court awarded 
Mother legal and physical custody of C.M.B. subject to Father's visitation on 
six (6) overnight visits out of every fourteen (14) days. The parties continued 
this custody arrangement until a trial on the merits was held January 12 and 20, 
2012.[4]
¶4 Testimony at trial showed the parties generally agreed the physical 
custody arrangement was working well, but Mother and Father also agreed they had 
problems communicating with each other. Father felt that Mother made unilateral 
decisions regarding the minor child without consulting him while Mother felt 
like Father unnecessarily questioned her parenting skills. Both parents agreed 
it was in C.M.B.'s best interest if they were both involved in her life.
¶5 A guardian ad litem ("GAL") was appointed in this case. She 
presented her report at trial and also testified. Her initial recommendation was 
that joint custody would not work due to the lack of communication between 
Mother and Father. She recommended that Father be given legal custody of C.M.B. 
with each parent having equal physical custody. She based this decision on 
Father's willingness to work with Mother in parenting C.M.B. and his willingness 
to maintain C.M.B.'s relationship with her maternal family. The GAL also noted 
Mother's apparent hostility to having Father involved in C.M.B.'s life because 
the two fathers of her two other daughters were in no way involved in their 
lives. After hearing all of the evidence at trial, the GAL changed her 
recommendation and decided joint legal custody could work if Mother and Father 
could communicate with each other. The GAL testified that both Mother and Father 
were capable parents who had C.M.B.'s best interests in mind. At the conclusion 
of all the testimony and evidence, including a home study of Mother's house 
which found Mother's home to be safe, clean, and appropriate, the trial court 
awarded legal custody to Father but granted the parties equal physical custody 
of C.M.B. On appeal Mother argues the record does not support the trial court's 
decision to award legal custody to Father.
¶6 The trial court's order also deviated from the child support guidelines by 
reducing Father's obligation to Mother from the amount calculated by the 
guidelines of $661.29 per month to $400 per month. Testimony showed Mother works 
as a physical therapy assistant making approximately $9.00 per hour. Father has 
a high paying job with an oil field services company. The trial court imputed 
income to him of approximately $9,000 per month.[5] To support this deviation, the trial 
court's order stated:

 
 Based on the parties' current income, a monthly credit of $800 that is 
 attributed to Mom supporting her two (2) older children, and the arguments 
 of counsel, Dad, as Obligor would normally pay to Mom a monthly child 
 support payment of $661.29 based on the Child Support Computation 
 Guideline. . .; however, the Court is deviating from the Child 
 Support Computation and is ordering Dad to pay Mom monthly child support 
 in the amount of $400.00 per month.
At trial Father testified he could more easily afford to send C.M.B. to 
private Montessori school if his child support obligations were reduced. On 
appeal Mother's second proposition is that the trial court failed to comply with 
the mandate set forth in 43 O.S. 
2011 §118H(B) requiring the trial court to justify any deviation with 
specific findings that such deviation is in the best interests of the minor 
child and the amount of support under the guidelines is "unjust or inappropriate 
under the circumstances." Father argues the record supports the deviation even 
if the specific findings were not included in the trial court's order.[6]
¶7 In her answer to Father's petition for joint custody, Mother requested a 
judgment be entered representing the amount of child support Father owed from 
the time of C.M.B.'s birth in December 2008 through the time he began paying 
child support in October 2010. At trial Father argued, and the trial court 
agreed, Mother's claim was barred by res judicata because the matter had 
been settled in the administrative proceeding where Father argued Mother waived 
her right to any child support arrearages. Mother argues the record does not 
firmly establish the matter was litigated in administrative court and, even if 
it was, she did not knowingly waive her right to child support arrearages as she 
was unrepresented by counsel at the administrative level. Mother's third 
appellate argument is that the trial court erred in the denial of her request 
for payment for child support arrearages.
LEGAL CUSTODY OF C.M.B.
¶8 "On appeal, this Court will not disturb the trial court's judgment 
regarding custody absent an abuse of discretion or a finding that the decision 
is clearly contrary to the weight of the evidence." Daniel v. Daniel, 2001 OK 117, ¶21, 42 P.3d 863. The burden is on the 
appealing party to show that the decision is "erroneous and contrary to the 
child's best interests." Id. "Absent such a showing, the trial court's 
determinations are presumptively correct." Shaw v. Hoedebeck, 1997 OK CIV APP 69, ¶11, 948 P.2d 1240 (citing Carpenter 
v. Carpenter, 1982 OK 38, 645 P.2d 476). We give deference to 
the trial court in reviewing custody decisions because it "is better able to 
determine controversial evidence by its observation of the parties, the 
witnesses and their demeanor." Hoedebeck, 1997 OK CIV APP 69, ¶10.
¶9 Mother argues the trial court awarded Father legal custody of C.M.B. to 
avoid having to require Father to pay child support to Mother and despite the 
fact he ignored his paternal obligations until he was required to submit to a 
paternity test per court order. Mother insists there was nothing in the record 
to show it was in C.M.B.'s best interests that Father be granted legal 
custody.
¶10 We disagree with Mother's interpretation of the facts and record. First, 
the trial court ordered Father to pay child support negating Mother's first 
argument. Second, the record does not show Father ignored his paternal 
obligations until ordered to submit to a paternity test. Rather, Father had 
little reason to suspect he was the father of C.M.B. even after Mother told him 
it was a possibility. Mother had been living with another man around the time of 
conception. This man was listed as the father on the birth certificate and a 
paternity suit had also been filed against him. We recognize there is no dispute 
that Father was not involved in C.M.B.'s life until she was approximately 
eighteen (18) months old, but once Father confirmed his paternity of C.M.B., by 
all accounts he became an active and involved parent.
¶11 Our review of the record shows the trial court placed great weight on its 
belief that Father was the best party to follow court orders and encourage a 
relationship with the other parent when deciding to grant legal custody to 
Father. Given our duty to defer to the trial court's consideration of witnesses 
and evidence, we cannot say this decision was clearly contrary to the weight of 
the evidence. We affirm the trial court's award of legal custody to Father.
CHILD SUPPORT DEVIATION
¶12 Oklahoma law provides for a rebuttable presumption that the amount of 
child support calculated by the child support guidelines is the correct amount 
of child support to be awarded. 43 
O.S. 2011 §118(A). Section 118H(B) provides the trial court "may deviate" 
from the amount of support indicated by the guidelines "if the deviation is in 
the best interests of the child and the amount of support so indicated is unjust 
or inappropriate under the circumstances." Should the trial court deviate from 
the child support guidelines, it is required to "make specific findings of fact 
supporting such action." 43 O.S. 
2011 §118H(C) ("[T]he court shall make specific findings of 
fact supporting such action.) (Emphasis added.) The findings of fact must 
include the following:

 
 1. The reasons the court deviated from the presumptive amount of child 
 support that would have been paid pursuant to the guidelines,
 2. The amount of child support that would have been required under the 
 guidelines if the presumptive amount had not been rebutted, and
 3. A finding by the court that states how, in its determination:
 
 
 a. the best interests of the child who is subject to the support 
 award determination are served by deviation from the presumptive 
 guideline amount, and
 b. application of the guidelines would be unjust or inappropriate in 
 the particular case before the 
 tribunal.
43 O.S. 2011 §118H(C). Under 
the child support guidelines, Father's child support obligation to Mother was 
$661.29 per month. The trial court reduced this amount to $400.00 per month but 
failed to make specific findings of fact justifying the deviation as required by 
43 O.S. 2011 §118H(C). Thus, 
this portion of the trial court's order must be VACATED and REMANDED for a 
determination of whether such facts exist to support the deviation, and, if so, 
to articulate them as required by statute. See Kingery v. Kingery, 2011 OK CIV APP 122, ¶¶16-20, 270 P.3d 192 (reversing and 
remanding a child support order which deviated from the guidelines for omission 
of judge's signature and for not including factual findings explaining how the 
child support obligation was derived).
CHILD SUPPORT ARREARAGES
¶13 Mother's allegation the trial court erred by finding her claim for child 
support arrearages was barred by res judicata depends on whether the 
issue was or could have been litigated at the administrative level.[7] The doctrine of 
res judicata, now commonly referred to as "claim preclusion," bars 
relitigation of issues by parties or their privies which were or could have been 
raised in a previous proceeding which resulted in a prior judgment on the 
merits.[8] 
State ex rel. Moshe Tal v. City of Oklahoma City, 2002 OK 97, ¶20, 61 P.3d 234. "The party against 
whom it is interposed . . . must have had a full and fair opportunity to 
litigate the claim or critical issue." Id. "Oklahoma's jurisprudence has 
foreshadowed a willingness to apply preclusion doctrine to final adjudicative 
administrative decisions if appropriate and not subject to some 
recognized exception." Feightner v. Bank of Oklahoma, N.A., 2003 OK 20 ¶13, 65 P.3d 624 (emphasis added).[9] See also 
Dority v. Green Country Castings Corp., 1986 OK 67, 727 P.2d 1355[10]; 
Bostwick v. Atlas Iron Masters, Inc., 1988 OK CIV APP 20, 780 P.2d 1184.[11] "[A] person who has once 
actually administratively litigated his claim, fully and fairly. . .and lost, 
may not then move to a different forum and successively litigate the same claim 
or issue again outside the confines of normal judicial review of administrative 
decisions." Feightner, 2003 
OK 20, ¶18.
¶14 Mother argues the issue was not litigated at the administrative level and 
that she did not knowingly waive her right to child support arrearages because 
she was not represented by counsel at the time. Thus, she argues, the doctrine 
of claim preclusion cannot prevent her for making her claim at the district 
court. However, Oklahoma law does not support the pro se exception Mother 
argues. Pro se litigants are held to the same standard as an attorney. 
Funnell v. Jones, 1985 OK 
73, ¶4, 737 P.2d 105. Further, 
Oklahoma's statutory child support enforcement scheme shows Mother was given the 
opportunity to litigate the issue of child support arrearages at the 
administrative level. Failing to do so bars Mother from later making her claim 
in district court.
¶15 The Oklahoma Department of Human Services ("DHS") is the state agency 
responsible for administering the child support enforcement program for the 
State of Oklahoma. 56 O.S. 2011 §§ 
237(A), 237.7(1). Oklahoma law gives DHS the authority to conduct child 
support enforcement administrative proceedings through the Office of 
Administrative Hearings: Child Support ("OAH").[12] Id. at §237.7(3). Such 
hearings are conducted before administrative law judges ("ALJ"). Id. at 
§237.7(3). After evidence has been presented at an administrative hearing, the 
ALJ shall enter a written order containing findings of fact and conclusions of 
law as to each contested issue. Id. at §237.8. OAH is authorized to issue 
orders detailing the current support obligation and past due support 
obligations. See id. at §237A(A)(2). Final orders shall be appealable 
directly to the district court in the same manner as provided in the Oklahoma 
Administrative Procedures Act. Id. at §240.3(A)(1). See also 75 
O.S. 2011 §§318-323. But see Dept. of Human Services v. Hernandez, 2003 OK CIV APP 35, ¶3, 68 P.3d 229.[13] Such administrative 
orders shall be docketed in the district court and "shall be enforced by the 
district court in the same manner as an order of the district court." 56 O.S. 2011 §237.10.[14] See 
also Okla. Admin. Code §340:2-28-50.
¶16 The administrative order in the record is a pre-printed form with 
handwritten entries to complete the required information. The order confirms the 
paternity of Father and orders him to pay child support in the amount of $756.25 
per month starting October 2010. Paragraph 8 provides a blank space for a 
judgment to be entered against Father for any past due support for the time 
period preceding October 2010. The term "N/A" is entered in this space. Whether 
this entry shows the issue was litigated before the administrative court and no 
support was ordered or whether it shows the issue was not presented at the 
administrative level is irrelevant. The issue could have been litigated 
at the administrative hearing.
¶17 We see no reason why an analysis similar to that applied in 
Feightner and Bostwick, supra, should not apply to the case at 
bar. The administrative order entered by OAH addressed the issues of paternity 
and support obligations and was thus a "final" order within the meaning of 
§240.3(A)(1).[15] No other issues remained to be litigated between 
the parties at the administrative level. See footnote 12, supra. 
Because DHS was providing child support services to Mother, the claim was 
appropriately pursued at the administrative level.[16] 56 O.S. 2011 §237(B)(3). Mother had 
the opportunity to request a judgment for prior support obligations at the 
administrative level but either failed to present the issue or was otherwise 
denied such a judgment. Mother did not appeal the administrative order to the 
district court. 56 O.S. 2011 
§240.3(A)(1). Once she failed to appeal, her right to a review of the issues 
addressed by the administrative order ended. See 75 O.S. 2011 §§318, 323. Similar to 
the proceedings in Feightner and Bostwick, the administrative 
remedies available to Mother were not her only means of seeking relief, but once 
she pursued administrative remedies through OAH, she was bound by those 
procedures. See Feightner, 2003 OK 20, ¶¶17-19; 
Bostwick, 1988 OK CIV APP 
20, ¶¶8-9.
¶18 Oklahoma's child support enforcement scheme does not provide a statutory 
exception to giving OAH decisions preclusive effect. Rather, it establishes 
procedures to appeal from an adverse administrative decision, 56 O.S. 2011 §240.3(A)(1), and 
states such decisions "shall be enforced by the district court in the same 
manner as an order of the district court." Id. at §237.10. These appeal 
procedures were the appropriate avenue for Mother to pursue judicial review of 
the denial of her claim for child support arrearages. See Feightner, 2003 OK 20, ¶18. The doctrine of 
claim preclusion, the purpose of which includes "conserv[ing] judicial resources 
and prevent[ing] inconsistent decisions," id. at ¶15, prohibits Mother 
from presenting the same issue in a different forum. Id. at ¶18. The 
trial court correctly barred Mother from relitigating the issue of child support 
arrearages in the district court action because the issue could have been 
litigated at the administrative level.
¶19 Consistent with the foregoing, the decision of the trial court is 
AFFIRMED IN PART, VACATED IN PART AND REMANDED FOR FURTHER PROCEEDINGS 
consistent with this opinion.

BELL, P.J., and GOREE, J., concur.

FOOTNOTES

[1] During 
the proceedings below, Ms. Butler married and changed her last name to Norman. 
For ease of reference, we used her previous last name of Butler in our case 
caption.

[2] 
Defendant/Appellee Lafe Coldwater also filed a counter-petition in error which 
was later dismissed by the Supreme Court as untimely filed. Because the 
counter-petition in error was dismissed, we have not referred to the parties as 
counter-appellant or counter-appellee, respectively.

[3] In 
addition to requesting joint custody, Father's petition also asked the district 
court to establish a visitation schedule and recalculate Father's child support 
obligations.

[4] Prior 
to the January 2012 trial, Father obtained a default judgment after Mother 
failed to answer his petition for joint custody which granted the parties joint 
legal and physical custody of C.M.B., but designated Father as the final 
decision maker should any disputes arise regarding the child. Mother then hired 
counsel who had the judgment vacated. Mother answered Father's petition, and the 
case proceeded to trial.

[5] To 
calculate Father's imputed income, the trial court considered his monthly salary 
along with an average of past years' bonuses and stock payments. Father was 
unable to calculate exactly the amount of bonus and stock payments he would have 
each year but appears to have no disagreement with the amount of income the 
trial court imputed to him. This was not one of the issues Father raised in his 
counter-petition in error which was dismissed by the Supreme Court.

[6] In his 
reply brief, Father contends the following facts support the trial court's 
deviation: Mother's previous receipt of public assistance, the increased 
household income due to Mother's marriage to Joshua Norman, free child care 
provided by paternal grandparents, and the child's young age. However, our 
review of the record shows these facts were not argued during the trial on the 
merits.

[7] The 
question of whether claim preclusion applies can be a question of law or a mixed 
question of law and fact. Feightner v. Bank of Okla. N.A., 2003 OK 20, ¶3, 65 P.3d 624. "It is solely a 
question of law if (1) the facts are undisputed, (2) the preclusion question can 
be answered solely by reviewing the judgment put forward as the bar, or (3) the 
preclusion determination can be made solely by inspection of the record of the 
proceeding(s) culminating in the judgment put forward as the bar. [A] 
deferential standard of review applies to resolutions of disputed facts when 
supported by reasonable evidence; an independent judgment standard of review 
applies to the ultimate conclusion that these facts do or do not trigger 
preclusion." Id. (internal citations omitted).

[8] We note 
Father's petition requesting joint custody also asked the district court to 
recalculate his support obligations. While the issue of current and ongoing 
support obligations was addressed by the administrative order, the doctrine of 
claim preclusion does not apply to this issue. Mother, Father, and DHS all 
retain the ability to request modification of support obligations on a 
prospective basis so long as the child is entitled to parental support. 43 O.S. 2011 §§112(E), 118I, 
118.1(A).

[9] "[O]ne 
recognized exception is when there is a statutory intent or directive to the 
contrary." Feightner, 2003 OK 
20, ¶14. The Feightner Court found no statutory exception existed in 
the statutes providing for administrative hearings at the Oklahoma Department of 
Labor. Id. at ¶¶17-19. The Court applied the preclusion doctrine to bar a 
plaintiff from pursuing her claim for unpaid overtime compensation in a suit in 
district court when the matter had been fully litigated and decided against her 
favor at the administrative level. Id. at ¶¶12-19. The Court concluded 
the administrative relief "was to be an alternative one in nature and . . . an 
individual with a wage claim enforceable in both administrative and judicial 
forums would not be mistakenly required to exhaust the former to gain access to 
the latter." Id. at ¶17. "Exhaustion of administrative remedies is 
normally a prerequisite for resort to the courts in matters involving 
adjudicative administrative proceedings subject to the [Oklahoma Administrative 
Procedures Act, 75 O.S. §250, 
et seq.]." Feightner, 2003 OK 20, ¶17 (internal citations 
omitted).

[10] In 
addition to finding the National Labor Relations Act ("NLRA") did not preempt 
aggrieved employees' state statutory retaliatory discharge claims, the Supreme 
Court held the NLRA allowed aggrieved employees to recover cumulative and 
supplemental remedies. Dority, 1986 OK 67, ¶¶6-11 and 12-14. The 
aggrieved employees were successful in their administrative claims before the 
National Labor Relations Board. Id. at ¶12. The Supreme Court concluded 
this prior administrative adjudication did not bar the employees' pursuit of 
remedies in state court because the state court claims "[did] not disturb the 
scheme of remedies affordable by the administrative tribunal." Id. at 
¶13.

[11] In 
Bostwick, 1988 OK CIV APP 
20, ¶2, plaintiff suffered a work-related injury resulting in approximately 
four months of medical leave. Plaintiff filed a worker's compensation claim 
against his employer and was discharged from his position upon returning to 
work. Id. Plaintiff filed an administrative claim for unemployment 
benefits with the Oklahoma Employment Security Commission ("OESC") which denied 
his claim concluding plaintiff was dismissed for cause. Id. at ¶3. 
Plaintiff did not appeal the OESC's findings but later filed a retaliatory 
discharge claim under the workers' compensation code in district court. 
Id. The Court of Civil Appeals ("COCA") concluded the adverse OESC 
administrative ruling did not bar his retaliatory discharge claim because the 
remedies differed between the two. Id. at ¶5. "The remedy affording by 
OESC [was] limited to receipt of unemployment benefits . . . and applie[d] where 
employee is unemployed through no fault of his or her own." Id. However, 
the remedy afforded by a successful retaliatory discharge claim "should be 
viewed as collateral rather than incidental to claims for bodily injury or 
unemployment benefits. Furthermore, recovery [for a retaliatory discharge claim] 
is not barred where there is more than one reason for employee's discharge 
[including dismissal for cause] so long as retaliatory motivations comprise a 
significant factor in the decision to terminate." Id. Plaintiff was 
allowed to pursue his retaliatory discharge claim but was bound by OESC's 
findings of fact regarding the cause for his dismissal. Id. at ¶8. 
"[S]ubject to adequate opportunity for administrative review, resolution of a 
disputed issue of fact properly before the OESC should be allowed the same 
effect as such finding in a judicial review would be entitled by statute." 
Id. at ¶8. COCA noted administrative proceedings required procedural due 
process but that "no particular form of procedure is dictated, and failure to 
avail oneself of the full procedures provided by state law does not constitute 
inadequacy of such procedures." Id. at ¶9.

[12] 
Notably, OAH does not have jurisdiction to determine child custody. That duty 
remains solely within the jurisdiction of the district courts. Compare 56 O.S. 2011 §§237(A), 237.7(3) and 
75 O.S. 2011 §308a with 43 O.S. 2011 §551-201.

[13] In 
Hernandez, 2003 OK CIV APP 
35, ¶1, the putative father appealed an administrative order to the district 
court which affirmed the administrative order establishing paternity of the 
child but leaving unresolved the issue of support obligations even though DHS 
had requested a child support order in its application to OAH. The putative 
father then appealed the district court order to the Supreme Court. Id. 
Once assigned to the Court of Civil Appeals ("COCA"), COCA found the trial court 
had no jurisdiction to consider putative father's administrative appeal because 
the order was not a final order within the meaning of 56 O.S. 2001 §240.3(A)(1) or 75 O.S. 2001 §318(A)(1). Id. 
at ¶¶3-4. Because the administrative order did not address putative father's 
support obligations, it did not resolve all the issues arising out of the 
controversy between the parties depriving the district court of appellate 
jurisdiction. Id. at ¶¶3-4.

[14] The 
plain reading of the statute requires the final administrative order to be filed 
with the district court even when the aggrieved party appeals the administrative 
order to district court. 56 O.S. 2011 
§237.10 ("Administrative orders entered pursuant to this title shall be 
docketed in the county of the underlying district court order, if 
any.").

[15] 
While OAH is authorized to enter orders addressing prior support obligations, no 
statutory authority or case law mandates an administrative order do so in order 
to be a final order within the meaning of §240.3(A)(1). However, the order must 
address both paternity and, at the very least, current support obligations to be 
a final order. Hernandez, 2003 OK CIV APP 35, 
¶¶1-3.

[16] OAH 
child support administrative proceedings are not exactly an alternative remedy 
nor are they supplemental to or cumulative to using a judicial forum to 
establish child support obligations. Rather, the two forums can be said to have 
concurrent jurisdiction over the subject matter. See Scungio v. Scungio, 
2012 OK 90, ¶11, 291 P.3d 616. See also 43 O.S. 2011 §112(E) (providing "any 
child shall be entitled to support by the parents until the child reaches 
eighteen (18) years of age"); 10 
O.S. 2011 §7700-103 (authorizing both district and administrative courts to 
adjudicate parentage under the Uniform Parentage Act, 10 O.S. 2011 §7700-101, et 
seq.). Mother's action against Father to establish paternity and support 
obligations was pursued at the administrative level through DHS, but Mother 
could also have pursued an action to establish paternity and support obligations 
in district court.





 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Court of Civil Appeals Cases Cite
Name
Level 1988 OK CIV APP 20, 780 P.2d 1184, 60 OBJ 2865, Bostwick v. Atlas Iron Masters, Inc.
Discussed at Length 2003 OK CIV APP 35, 68 P.3d 229, STATE ex rel. DEPT. OF HUMAN SERVICES v. HERNANDEZ
Discussed at Length 2011 OK CIV APP 122, 270 P.3d 192, KINGERY v. KINGERY
Discussed 1997 OK CIV APP 69, 948 P.2d 1240, 68 OBJ 3833, Shaw v. Hoedebeck
Discussed at Length
Oklahoma Supreme Court Cases Cite
Name
Level 1986 OK 67, 727 P.2d 1355, 57 OBJ 2690, Dority v. Green Country Castings Corp.
Discussed 2001 OK 117, 42 P.3d 863, 72 OBJ 3708, DANIEL v. DANIEL
Discussed 2002 OK 97, 61 P.3d 234, STATE ex rel. TAL v. CITY OF OKLAHOMA CITY
Discussed 2003 OK 20, 65 P.3d 624, FEIGHTNER v. BANK OF OKLAHOMA, N.A.
Discussed at Length 2012 OK 90, 291 P.3d 616, SCUNGIO v. SCUNGIO
Discussed 1982 OK 38, 645 P.2d 476, Carpenter v. Carpenter
Discussed 1985 OK 73, 737 P.2d 105, Funnell v. Jones
Discussed
Title 10. Children Cite
Name
Level 10 O.S. 7700-101, Short Title
Cited 10 O.S. 7700-103, Applicability and Effect of Act - Adjudication Authority
Cited
Title 43. Marriage Cite
Name
Level 43 O.S. 551-201, Initial Child Custody Jurisdiction
Cited 43 O.S. 118, Child Support Guidelines
Cited 43 O.S. 118H, Deviation from Child Support Guidelines
Discussed at Length 43 O.S. 112, Care, Custody, and Support of Minor Children
Discussed
Title 56. Poor Persons Cite
Name
Level 56 O.S. 237, Support Collection, Parent Location, and Paternity Determination Services
Discussed at Length 56 O.S. 237.10, Docketing and Enforcement of Administrative Orders
Discussed at Length 56 O.S. 240.3, Appeal of Final Orders of the Office of Administrative Hearings
Discussed at Length
Title 75. Statutes and Reports Cite
Name
Level 75 O.S. 250, Short Title
Cited 75 O.S. 308a, Governing Provisions
Cited 75 O.S. 318, Judicial Review
Discussed